UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KRISTIN B. RIPSON,

    Plaintiff,

v.                                                 Case No.:  6:22-cv-288-KCD

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff Kristin B. Ripson sues under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner of Social Security's decision denying her application for disability insurance benefits. (Doc. 1.)[1] For the reasons below, the Commissioner's decision is affirmed.

## I. Background

The procedural history, administrative record, and law are summarized in the parties' briefs (Doc. 21; Doc. 24) and are not fully repeated here. In short, Ripson filed her initial application for disability benefits in 2013. (Tr. 127.) Her request was denied at all levels (Tr. 60) but appealed and remanded for the

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

Administrative Law Judge (ALJ) to consider additional evidence (Tr. 924, 1111-12). Meanwhile, Ripson had successfully filed a claim for disability benefits beginning April 1, 2017. (Tr. 1111-12) Thus, the period at issue runs from the date her alleged disability began on June 9, 2012, until April 1, 2017. (Tr. 924.)

Following a hearing, the ALJ again found that Ripson was not disabled. (Tr. 937.) To make this determination, the ALJ used the multi-step evaluation process established by the Commissioner. *See* 20 C.F.R. § 404.1520(a).[2] The ALJ found that although several of Ripson's impairments qualified as severe, she retained the residual functional capacity ("RFC") to perform light work with restrictions:

> The claimant can stand and walk 4 hours total and sit at least 6 hours. The claimant can never climb ladders, ropes, or scaffolds, or work in high, exposed places. She can occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl. She can occasionally work in close proximity to moving, mechanical parts. She can frequently reach in all directions, except only

---

[2] An individual claiming Social Security disability benefits must prove that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

> occasionally reach overhead. She can frequently handle bilaterally. She can have frequent exposure to temperature extremes, and vibrations. She can perform simple routine tasks and maintain occasional interactions with coworkers and the public.

(Tr. 933-34.) After considering the RFC and other evidence, including vocational expert testimony, the ALJ ultimately concluded that Ripson would be capable of successfully transitioning to other jobs that exist in significant numbers in the national economy. (Tr. 937.) Thus, Ripson was not disabled as that term is defined in this context. (Tr. 937.) She exhausted her administrative remedies, and this lawsuit timely followed. (Doc. 1.)

## II. Standard of Review

Review of the Commissioner's (and, by extension, the ALJ's) decision denying benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When determining whether the decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Finally, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [her] position; [she] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

### III. Analysis

Ripson argues on appeal that the ALJ did not properly consider some of the medical opinions in the record. (Doc. 21 at 19.) Specifically, Ripson objects to the ALJ's analyses of Dr. Weiss, Dr. Gayles, and Dr. Vinuela. (Doc. 21 at 22-30.)

The Social Security Regulations for evaluating medical opinions changed in March 2017. Because Ripson's claim was filed before that time, the prior regulations apply. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).

4

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The ALJ considers every medical opinion received together with the rest of the relevant evidence. *Id.* § 404.1527(b)-(c). An ALJ assesses a medical opinion by looking at several factors, including:

> (1) examining relationship—giving more weight to opinions from a medical source that has examined the claimant than one that hasn't;
> (2) treatment relationship—generally giving more weight to opinions from a medical source that treats the claimant than one that doesn't;
> (3) supportability—giving more weight to opinions supported by other evidence from the medical source, particularly medical signs and laboratory findings;
> (4) consistency—giving more weight to opinions that are consistent with the record as a whole;
> (5) specialization—generally giving more weight to opinions from a specialist about medical issues in their area of specialty than to opinions from a medical source who is not a specialist;
> (6) any other factors that support or contradict the medical opinion.

*Id.* § 404.1527(c)(1)-(6).

The second factor is particularly relevant for present purposes because Ripson claims all three contested medical opinions come from treating sources.

(Doc. 21 at 26, 28.) The Eleventh Circuit set a "good cause" standard for disregarding this kind of evidence:

> Absent good cause, an ALJ is to give the medical opinions of treating physicians substantial or considerable weight. Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. With good cause, an ALJ may disregard a treating physician's opinion, but he must clearly articulate [the] reasons for doing so.

*Winschel*, 631 F.3d at 1179. Finally, regardless of the ALJ's ultimate conclusion, she must state the weight given to each medical opinion. And the ALJ must explain her reasoning in enough detail for a reviewing court to determine whether she supported it with substantial evidence. *Id.*

With these legal standards as the backdrop, the medical opinions are addressed in turn.

**A. Dr. Weiss**

Dr. Weiss, a neurologist, gave two medical opinions: first for the period beginning 12/1/15 (Tr. 1355-58), and second for the period beginning 10/18/16 (Tr. 1557-60). In his first opinion, he stated Ripson had "probable" multiple sclerosis and thus could walk one-half city block, could sit 15-20 minutes before needing to stand up and only 2 hours out of a full workday, could stand for 5 minutes before needing to sit down and less than 2 hours of a full workday.

6

(Tr. 1356.) He also said Ripson would need to take unscheduled breaks, could rarely twist or lift 10 pounds, and could never stoop, crouch, or squat. (Tr. 1356-57.) Dr. Weiss estimated Ripson would be off-task 25% of the day or more and would be absent from work more than 4 days per month. (Tr. 1358.) He left several questions unanswered on the form used to submit this opinion. (Tr. 1355-58.)

The ALJ gave this opinion "very little weight, as it is inconsistent with this physician's later withdrawal of the [multiple sclerosis] diagnosis. Further it is inconsistent with other opinions in the record that are well supported by objective findings." (Tr. 929.) This conclusion is improper, Ripson contends, because Dr. Weiss never withdrew his diagnosis of "probable multiple sclerosis." (Doc. 21 at 23.)

The Court is not convinced by Ripson's argument. Dr. Weiss later stated, "I believe she has [relapsing-remitting multiple sclerosis], but I cannot be certain," and "I am not sure if this is [multiple sclerosis]—at this point we are watching and waiting. We have offered her a second opinion." (Tr. 932, 1417, 1443.) And in Dr. Weiss's second opinion, in response to the question asking, "does your patient has multiple sclerosis?" he did not check "yes" or "no." (Tr. 1557.) Instead, he wrote "undetermined at this time." (Tr. 1557.) Thus, semantics aside, there is at least substantial evidence to support the ALJ's expressed lack of confidence in a multiple sclerosis diagnosis from Dr. Weiss.

7

This is especially true, as the ALJ noted, given other objective findings. For example, Dr. Goldstein, a medical expert, testified that the record does not support a diagnosis of multiple sclerosis and that, in his view, "Dr. Weiss says there is not sufficient support of the diagnosis." (Tr. 930, 968.) Other objective evidence that contradicts Dr. Weiss's opinion includes medical opinions from Dr. Cooper and Dr. Goldstein finding Ripson to be far less limited. (Tr. 742-52, 928, 930, 967-71.)

Dr. Weiss's second opinion included very similar limitations to his first. (Tr. 1557-60.) The ALJ stated she gave "this opinion very little weight, as it is inconsistent with treatment notes from 2016 showing the claimant had a normal gait, muscle strength, station, sensation, and reflexes." (Tr. 930.) This inconsistency is seen when comparing the opinion with the treatment notes in the transcript on pages 1460-61, 1466-67, and 1471. Although Dr. Weiss's treatment notes do also show some pain sensation and physical limitations, they are different enough with the limitations in his medical opinion to create a genuine inconsistency. *See Simon v. Commm'r of Soc. Sec.*, 7 F.4th 1094, 1107 (11th Cir. 2021). And viewing the record as a whole, Dr. Weiss's second medical opinion is contradicted just as much as his first by Dr. Cooper's and Dr. Goldstein's medical opinions.

Thus, it appears evidence supporting a contrary finding provided the ALJ good cause to give less weight to a treating physician's medical opinion.

And afterward, the ALJ properly relied on the factors of supportability and consistency to evaluate Dr. Weiss's medical opinion. This affords substantial evidence.

**B. Dr. Gayles**

Dr. Gayles found Ripson could occasionally lift 10 pounds, could stand and walk for less than 2 hours per day, and could sit for about 3 hours per day. (Tr. 905-06, 928.) He further said Ripson could only sit for 10 minutes before changing position and stand for 5 minutes before changing position; she would need the ability to change position at-will and would sometimes need to lie down at unpredictable intervals during a workday. (Tr. 905-06, 928.) Dr. Gayles estimated that Ripson could never twist, stoop, crouch, or climb ladders and could only occasionally climb stairs. (Tr. 905-08, 928.) He thought her condition would limit Ripson's reaching, pushing, pulling, kneeling, crawling, and balancing abilities. (Tr. 905-08, 928.) Dr. Gayles opined her symptoms would frequently interfere with simple work-related tasks and would cause her to miss work more than 4 days per month. (Tr. 905-08, 928.) Finally, he determined these symptoms began when she had an accident and fell in December 2013. (Tr. 905-08, 928.)

The ALJ gave "this opinion little weight, as it is not supported by objective evidence." (Tr. 928.) As Ripson notes in her brief, the opinions of Dr. Gayles and Dr. Weiss are similar. (Doc. 21 at 26.) Thus, the same objective

9

evidence (cited above) that is inconsistent with Dr. Weiss's opinion would contravene Dr. Gayles. Also, as the ALJ aptly noted, Dr. Gayles's reliance on a December 2013 sprained ankle is problematic because the record shows Ripson was treated for this injury and her treatment provider noted improvement shortly after. (Tr. 493-98, 928.)

For these reasons, there was good cause to give Dr. Gayles's opinion less weight as a treating physician. His opinion was not bolstered by the evidence and, in fact, some evidence supported a contrary finding. Like with Dr. Weiss's medical opinion, the ALJ properly relied on the factors of supportability and consistency to evaluate his medical opinion. Thus, there is substantial evidence for the ALJ's treatment of Dr. Gayles.

**C. Dr. Vinuela**

Dr. Vinuela gave at least three opinions, but Ripson argues the ALJ erred in evaluating only one of them. (Doc. 21 at 27-29.) For the period between January 2014 and March 2016, Dr. Vinuela found Ripson to be seriously limited in several areas of mental functioning including her ability to: remember work-like procedures, maintain regular attendance and be punctual, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from her psychological symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and set realistic goals or make plans independently of

others. (Tr. 907-09, 927.) The form Dr. Vinuela used stated that a "serious limitation" meant Ripson would be distracted from the relevant job activity for 11-40% of the time. (Tr. 907.) In Dr. Vinuela's opinion, these limitations would keep Ripson from work more than 4 days per month. (Tr. 907-09, 927.)

The ALJ gave this opinion little weight because "the limitations are worded in vague terms." (Tr. 927.) She is right. One category on the form, "maintain attention for two hour segment," was marked with simply a question mark and no other rating. (Tr. 907.) Dr. Vinuela ranked several areas as simply "N/A." (Tr. 907-08.) And one category was marked with both a check mark in the most serious limitation ranking but also the letters "N/A." (Tr. 907.) What was the ALJ to make of such imprecise descriptions? Dr. Vinuela could have elaborated in the spaces left for him to explain the limitations and "include the medical/clinical findings that support this assessment." (Tr. 907-08.) Yet he crossed these sections out with a line, indicating he intentionally left them blank. (Tr. 907-08.) The only additional information Dr. Vinuela provided responded to the question asking for any other reasons Ripson would struggle to work at a regular job on a sustained basis. While the instructions directed him to rely on his own examination, Dr. Vinuela reiterated Ripson's subjective response: "Pt complains of severe pain, anxiety, and depression." (Tr. 908.) All of this indicates it would be reasonable to conclude that this medical opinion was too vague. *See, e.g.*, *Bloodsworth*, 703 F.2d at 1240 (explaining that "the

opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight"); *Williams v. Berryhill*, No. CV 17-00346-N, 2018 WL 3236052, at *7 (S.D. Ala. July 2, 2018) (finding good cause to discount the opinion of a treating physician where the physician "did not provide a detailed explanation for his assessment").

There are other reasons that support the ALJ affording less weight to Dr. Vinuela's medical opinion. For example, as the ALJ noted, "it is not sufficient for a treating source to merely circle limitation levels on a pre-printed form. Rather, the degree of limitation indicated in the opinion must be well supported by objective evidence and a recitation of evidence relied upon." (Tr. 927.) And conversely, an opinion unsupported by relevant evidence, particularly medical signs and laboratory findings, will result in a finding of reduced weight. 20 C.F.R. § 404.1527(c)(3). Finally, Dr. Vinuela's opinion was at least partially contradicted by mental assessments from other medical sources including Dr. Gayles, Dr. Cooper, and Dr. Sullivan. (Tr. 523-24, 528, 742, 933, 1373.)

Thus, good cause exists here to give a treating physician's medical opinion less weight because Dr. Vinuela's opinion was not bolstered by the evidence and because it was conclusory. And like the last two medical opinions, the ALJ properly relied on the factors of supportability and consistency to

12

evaluate Dr. Vinuela's medical opinion. As a result, there is substantial evidence to affirm the ALJ's conclusion here as well.

## IV. Conclusion

Considering the record as a whole, substantial evidence supports the ALJ's findings. Accordingly, the Court **AFFIRMS** the Commissioner's decision and directs the Clerk to enter judgment for the Commissioner and against Kristin Ripson and close the file.

**ENTERED** in Fort Myers, Florida this January 18, 2023.

*[Signature]*
Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record